## HOLLINGSHEAD *v.* L. A. GREEN & Co.

The defendants were stock brokers, and had money belonging to the plaintiff, to the amount of $1,600, on deposit as a margin on purchases and sales of stock made and to be made under a contract between the defendants and plaintiff. The plaintiff gave an order to the defendants to sell his Pittsburg, Fort Wayne and Chicago Railroad Company stock, and two hundred shares of Erie stock, which was one hundred more than he then had on hand. This order was not obeyed, but a larger amount of Erie stock was purchased, contrary to the plaintiff's order. If the order of the plaintiff had been obeyed, the amount on deposit would have been increased to $2,100, while the course taken resulted in a loss. The plaintiff called for his money, and was told by the defendants that if he would let it remain they would work the account, and would repay him all his money, viz: the $2,100, acknowledging their obligation to refund it. The defendants continued to speculate on the fund, and lost it all, and more.

Hollingshead *v.* Green & Co.

*Held,* that the defendants worked the account at their own risk, and were bound to refund to the plaintiff the $1,600 which he had when he gave the order which was disobeyed, and the additional $500 which he would have had if his order had been obeyed.

In General Term on Error.

*Matthews & Ramsey,* for plaintiff.

*Hoadly & Johnson,* for defendants.

TAFT, J.   The original suit in this case was brought to recover $2,100 of money in the hands of the defendants as stock brokers, left as a margin on certain railroad stocks purchased and held by the defendants for the plaintiff.

From the bill of exceptions, it appears that the plaintiff deposited $1,000 in money, which amount was increased by certain purchases and sales till the plaintiff had about $1,600 on deposit, as margin on a quantity of Pittsburg, Fort Wayne and Chicago Railroad Company stock, and Erie Railroad stock.

On the 20th of July, 1868, the plaintiff ordered the sale of his stock, and of one hundred shares of the Erie short —that is, his order was to sell one hundred shares more than he then had—which order was disobeyed by the defendants, and a loss was sustained thereby.   If the order had been obeyed, the amount on deposit would have been increased to $2,100.

Finding that a loss had been caused by this disobedience of orders, the defendants told the plaintiff to give himself no trouble about it; they would work it out and replace the money, viz: the $2,100, acknowledging the indebtedness.

We think from the evidence that they assumed the responsibility of the loss, and for the further operations, or, as they call it, "the working of the account."   When he called for payment of the amount to which, by his contract with them, he was entitled, they requested him to

let it remain, and they would make the amount good to him; in other words, would pay him the money. The weight of the evidence is to that effect. That was their duty, and they could not undertake less than that with the expectation of satisfying their customer, who seems to have understood his rights too well to waive them.

It was claimed by the counsel for the defendants that after the loss by the disobedience of the order to sell, a second contract was made, by which the account was to be worked out at the risk of the plaintiff, and that this contract waived the loss on the former, and that the plaintiff thereby assumed the risk of the second working of the account. The judge at Special Term could not so hold, and found for the plaintiff the amount of his fund, including both that which the plaintiff had on deposit before the order to sell the Erie stock, and the additional sum which he would have had on deposit if his order had been obeyed.

We regard the finding of the judge correct on this point, nor do we find any ground on which to interfere with the judgment at Special Term.